UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GABRIEL ANTONIO PEREZ
ROMERO,

      Petitioner,

v.                                    Case No.  2:26-cv-12-JES-NPM

WARDEN, FLORIDA SIDE SOUTH
DETENTION FACILITY, et al.,

      Respondents.
_____/

## OPINION AND ORDER

Petitioner Gabriel Antonio Perez Romero, an immigration detainee currently held at the Florida Soft Side South Detention Center (Alligator Alcatraz), initiated this action by filing a 28 U.S.C. § 2241 petition for writ of habeas corpus.  (Doc. 1). Respondents filed a response and a supplemental response to the petition.  (Doc. 11; Doc. 16).  Upon review of the parties' filings, the Court finds that a reply is unnecessary, and the petition must be granted.

### I.   Background

Perez Romero, a 56-year-old citizen of Cuba, entered the United States in 1980.  (Doc. 11 at 1).  He was ordered removed on August 18, 1998, but released under an order of supervision shortly thereafter. (Doc. 11 at 1; Doc. 1 at 2).  Perez Romero has complied with the order of supervision since.  (Doc. 1 at 2).  On November

28, 2025, Perez Romero appeared for his regularly scheduled reporting appointment where he was taken into custody by Immigration and Customs Enforcement (ICE) officers without explanation. (Id.)

On January 28, 2026, Perez Romero was taken to the San Ysidro Port of Entry at the border with Mexico, where he refused to agree to removal to Mexico. (Doc. 16 at 2).

## II. Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. Id. Detention may continue after the removal period, but not indefinitely.

Perez Romero argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future. In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention

2

no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699.  The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701.  So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id.  If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise.  Id.[1]

Here, there is no dispute that Perez Romero has been in ICE custody for more than six months following his latest order of removal.  Respondents contend that Perez Romero is not entitled to release because ICE attempted a third-country removal to Mexico but by failing to voluntarily depart, Perez Romero has thwarted ICE's efforts at removal.

Section 1231(a)(1)(C) explicitly provides for extension of the removal period "if the alien fails or refuses to make timely

---

[1] The Supreme Court subsequently clarified that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review after their detention exceeds six months.  See Clark v. Martinez, 543 U.S. 371 (2005) (extending Zadvydas's holding to inadmissible aliens as a matter of statutory interpretation).

application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).  When addressing a <u>Zadvydas</u> claim, courts have applied § 1231(a)(1)(C) in different ways:

> Many courts conduct an analysis using the burden shifting framework from <u>Zadvydas</u>, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under <u>Zadvydas</u> altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period.  In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the <u>Zadvydas</u> standard.

<u>Glushchenko v. U.S. Dep't of Homeland Sec.</u>, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted).  The Eleventh Circuit Court of Appeals has recognized that the six-month period may be tolled if the noncitizen "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." <u>Akinwale</u>, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)).  More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom

4

[are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" Singh, 945 F.3d at 1314 (quoting Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)).

Here, Respondents do not show that Perez Romero's actions implicated § 1231(a)(1)(C). They provide the declaration of Deportation Officer Juan Cuevas who states that "[o]n or about January 28, 2026, officers with the U.S. Immigration and Customs Enforcement (ICE), Enforcement Removal Operations (ERO), attempted to execute the removal of the petitioner, PEREZ ROMERO, Gabriel (A#023-475-758), to Mexico via the San Ysidro, CA Port of Entry. The petitioner failed to comply." (Doc. 16-1 at 2). It appears from Officer Cuevas's declaration that ICE merely transported Perez Romero to the Mexican border and asked him to voluntarily depart, which he refused to do. Respondents do not allege that Mexico actually agreed to accept Perez Romero or that ICE even had an approved plan for removal to Mexico that Perez Romero thwarted in some way. Further, assuming that Mexico was willing to accept Perez Romero, Officer Cuevas does not explain why ICE could not or did not thereafter seek travel documents for him or otherwise plan for his removal to Mexico in a different way, such as a charter flight. Without more, the Court cannot find that Perez Romero's

5

actions in California as described in Officer Cuevas's declaration prevented his removal and reset Zadvydas' 180-day clock.

Respondents present no evidence showing any significant steps taken to remove Perez Romero to Cuba or another country. Instead, their only effort at removal was a trip to the United States-Mexico border in an apparent attempt to coerce him into voluntarily departing to a country of which he is not a citizen. But detaining a 56-year-old noncitizen and using the specter of continued detention to compel him to "voluntarily" depart by walking across the international border does not constitute removal; rather, it is precisely the type of indefinite detention that Zadvydas sought to prevent. Respondents provide no evidence suggesting that ICE actually communicated with Mexico (or any other country) specifically regarding Perez Romero. Nor has Respondent demonstrated that necessary travel documents have been sought—let alone obtained—for any country. The Court also notes that it has been 125 days since the purported attempted removal to Mexico—far more than the 90 days contemplated by 8 U.S.C. § 1231(a)(1)(A), and Respondents admit that no further actions have been taken in the interim.

In short, Respondents have had more than 27 years—and more than six months since his present detention—to remove Perez Romero and are still unable to articulate a specific plan for his removal to Cuba, Mexico, or any other country. The Court's confidence in

6

Perez Romero's foreseeable removal is further undermined by the fact that other district courts recognize that Mexico's acceptance of a Cuban national may be contingent upon the noncitizen's agreement to go there. See Sanchez v. Bondi, et al., No. C25-2573-KKE, 2026 WL 160882, at 3-4 (W.D. Wash. Jan. 21, 2026) (noting that Mexico's conditional acceptance casted doubt on Respondents' ability to remove the petitioner); Arenado-Borges v. Bondi, No. 2:25-cv-2193-JNW, 2020WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he record suggest Mexico's acceptance may be contingent on the noncitizen's consent"). And while there may be some possibility that Mexico will eventually accept Perez Romero, "that is not same as a significant likelihood that [he] will be accepted in the *reasonably foreseeable future*." Arenado-Borges, 2025 WL 3687518, at *4 (emphasis added, quotations omitted).

Based on the evidence, or lack thereof, the Court finds that Respondents have failed to show a significant likelihood that Perez Romero will be removed in the reasonably foreseeable future. Therefore, he is entitled to release from detention under Zadvydas, but he remains subject to the terms of an order of supervision. If Perez Romero fails to comply with the conditions of release, he may be subject to criminal penalties—including further detention. See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress ... to subject [aliens] to supervision

7

with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Perez Romero to "assur[e] [his] presence at the moment of removal." Zadvydas, 533 U.S. at 680.

### III. Conclusion

Accordingly, it is **ORDERED**:

1. Gabriel Antonio Perez Romero's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

2. Respondents shall release Perez Romero within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on June 3, 2026.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

8